UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| MALIK ALEEM, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>CENIKOR FOUNDATION,<br><br>*Defendants.* | § § § § § § § § § § § § | Civil Action No. 4:19-cv-03032<br>c/w 4:19-cv-1583 |

### ALEEM PLAINTIFFS' MEMORANDUM IN REPLY REGARDING MOTION FOR EQUITABLE TOLLING

Plaintiff Malik Aleem, on his own behalf and on behalf of the proposed collective who he represents, hereby files this reply memorandum in support of his motion for equitable tolling.

Contrary to Defendant's claim, there is no binding Fifth Circuit precedent mandating denial of this motion. As both the Supreme Court and Fifth Circuit have recognized, a request for equitable tolling is, by definition, heavily dependent on the particular facts of each particular case. Here, the unique facts and the balance of equities weigh strongly in favor of granting relief. While Defendant claims that the delays in this case have resulted from "routine litigation," in reality this case has been anything but routine. While equitable tolling is not appropriate in every FLSA matter simply because of normal delays relating to ruling on a motion, the delays in this case were highly unusual, and to a large degree directly attributable to Cenikor's own dilatory actions. Under the particular facts presented by these particular plaintiffs, an order allowing equitable tolling is appropriate.

**ARGUMENT IN REPLY**

**A.    The *Sandoz* Case Does Not Mandate Denial of the Motion**

Defendant first argues that the Fifth Circuit's *per curiam* decision in *Sandoz v. Cingular Wireless*, 700 F. App'x 317 (5th Cir. 2017), "requires a denial of this motion."[1] This is inaccurate, both on the facts and the law.

The *Sandoz* decision, which is unpublished, begins by explicitly disclaiming any binding authority: "Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4."[2] That Fifth Circuit Local Rule states, in turn, that any opinion so designated "[is] not precedent, except under the doctrine of *res judicata*, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)."[3] Clearly, none of those exceptions apply.  Thus, although Defendant is certainly entitled to cite *Sandoz* for its persuasive value, it is no more *binding* on this Court than any other unpublished decision, which is to say, not at all.  The truly binding authority comes from those published Supreme Court and Fifth Circuit cases, cited in Plaintiffs' opening brief, which set forth the legal test for equitable tolling.[4]  Defendant does not (and cannot) dispute that these are accurately cited.

Even if *Sandoz* were binding, nothing in that decision would preclude the Court granting equitable tolling here.  As the Fifth Circuit has recognized, claims for equitable

---

[1]    Opposition Brief, Dkt. 80 at p. 5.
[2]    *Sandoz, supra*, 700 F. App'x at p. 317, introductory footnote.
[3]    5th Cir. L.R. 47.5.4.
[4]    *See* Plaintiffs' Brief, Dkt. 78 at fn. 7, 9, 10 (citing *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000), *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995), *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005), and *Holland v. Florida*, 560 U.S. 631, 632 (2010)).

tolling are not subject to bright-line rules and are instead "fact-specific, turning on the facts and circumstances of a particular case."[5] *Sandoz* is clearly distinguishable on the facts. In *Sandoz*, the Plaintiff argued that tolling was appropriate because "Cingular did not did not provide its employees with information sufficient to discover that their hourly rate for certain weeks was below the minimum wage and thus, no diligence was necessary."[6] However, this was simply not true. As the Court noted, Cingular provided its employees with timesheets and paycheck memos reflecting their earned pay and hours worked, and therefore showing that they were actually being paid less than $5.15 an hour.[7] This, the Court held, should have been enough to place them on notice and created an obligation for the plaintiffs to exercise "*some* level of diligence."[8]

That is not the case here, of course. To the contrary, Cenikor has repeatedly (and falsely) told these plaintiffs that they are not employees and are not entitled to any wages. In fact, the plaintiffs were required to sign documents stating "I further understand that under no circumstances can Cenikor be under any obligation to me; that I am a beneficiary and not an employee."[9] Thus, Cingular admitted that its employees were employees, and provided them with -and-white documents serving to place them on notice of the underpaid minimum wage. Cenikor took the opposite tact by forcing the plaintiffs to sign papers stating that they were not legally entitled to any pay whatsoever.[10]

---

[5]     *Jackson v. Davis*, 933 F.3d 408, 413 (5th Cir. 2019) (quotations marks omitted).
[6]     *Sandoz*, *supra* at p. 321.
[7]     *Id.* at 321.
[8]     *Id.*
[9]     *See, e.g.,* Dkt. #55, Exhibit B-1 (signed "LTC Consent for Services" form by Malik Aleem). Of course, the FLSA does not permit a worker to waive his right to wages simply by signing a paper. But the Plaintiffs did not know that.
[10]    Cenikor may reiterate its belief that this is, in fact, correct. But if Cenikor cannot defeat a request for equitable tolling simply by stating its belief that it is entitled to win on the merits. Nor can this Court make such a ruling on this limited pretrial record.

Moreover, the *Sandoz* plaintiff argued that the "extraordinary circumstance" justifying tolling was the Defendant's service of a Rule 68 offer of judgment to the named plaintiff.[11]  The Court held that this was not, in fact, an extraordinary circumstance.  Be that as it may, this holding has no applicability here.  Cenikor has not, in fact, made a Rule 68 offer to Aleem, or to any of the plaintiffs in this action.  What it has done, instead, is request an unprecedented 120-day extension of time to file an opposition brief, have that request denied, then breezily assume that it was entitled to the 120-day extension anyway.  As a result, Plaintiff's motion for certification is still pending seventeen months after it was filed.  This is "extraordinary" in a way that the service of a Rule 68 offer of judgment is not.  Indeed, the Court in *Sardoz* was at pains to state that "[w]e do not hold that protracted litigation can never constitute an extraordinary circumstance…"[12]  It left open the possibility that, in other circumstances, peculiarly lengthy litigation delays may exceed the "routine" and justify equitable tolling.  This is just such a circumstance.

**B.     Cenikor's Self-Serving Recitation of the Procedural History**

Cenikor devotes a substantial portion of its brief to arguing that its opposition brief was not, in fact, untimely.[13]  Cenikor bases this assertion on a text-only minute entry dated May 31, 2019, which granted an extension of time to file an opposition in the *Sorey* matter only.[14]  Cenikor, at the time, argued that this order applied to *Aleem* as well, even though the Order specifically referenced the *Sorey* case, but not *Aleem*.  However, on June 19, 2019, Chief Judge Jackson expressly <u>rejected</u> this interpretation and held:  "The Court notes that the extension of time granted in the Court's May 31, 2019 Order (19cv00267,

---

[11]     *Sandoz, supra*, at 321.
[12]     *Id.* at 322.
[13]     *See* Dkt. #80 at pp. 8-10.
[14]     The *Sorey* case number was M.D. La. No. 3:19-00267.  The *Aleem* case number was M.D. La. No. 3:19-cv-00268.

Doc. 31) only applied to 19cv00267, as indicated previously, because of the Joint Stipulation (19cv00267, Doc. 30) filed in that case."[15] It is truly baffling that, sixteen months later, Cenikor continues to hold fast to an interpretation that is at odds with the clear and unambiguous text of the Order, and which was later explicitly rejected by the presiding Judge.

Cenikor then states that, following a joint status conference, "the court stayed ruling on all issues until the motions to transfer were resolved."[16] According to Cenikor, this "stay" excused it from filing an opposition. However, that is not what happened. On July 1, 2019 – more than two weeks *after* Cenikor's opposition deadline had passed – the Court issued a text-only minute order stating "Ruling on pending motions deferred until issuances of Ruling on Motion to Transfer."[17] Stating that the <u>ruling</u> on a motion was <u>deferred</u> is very different from stating that the <u>briefing schedule</u> on a motion was <u>stayed</u>. And, indeed, Judge Jackson had previously held that Cenikor's requested extension to file an opposition had been denied.

The cold reality is that Cenikor had a firm deadline to file an opposition brief,[18] and did not file an opposition brief by that deadline. The motion for conditional certification was therefore unopposed.

//
//
//

---

[15] Dkt. #34 in M.D. La. No. 3:19-cv-00268, at p. 1.
[16] Dkt. 80 at p 9.
[17] Dkt. 43 (text entry only).
[18] Cenikor quibbles that its opposition brief was due on June 17, 2019 (a Monday) rather than June 14, 2019 (the preceding Friday). This is completely irrelevant, as its opposition was patently untimely either way.

### C. The Existence of Other Opt-Ins Is Irrelevant

Cenikor next argues that, because about 200 opt-ins[19] have already joined these various related actions, equitable tolling is unnecessary. The argument appears to be that, because 200 people learned of these lawsuits without receiving formal notice, all other former Cenikor residents should have heard about them as well. This is based on nothing more than conjecture.

Cenikor would apparently have this Court believe that 200 plaintiffs are a large number, but the reality is that they have provided a numerator with no denominator – i.e., what is the total number of potential plaintiffs at issue? It is also misleading because the approximately 200 figure takes into account *all six actions,* while this motion is related to the *Aleem* plaintiffs, from Baton Rouge, alone. The number of people who have (or have not) joined the action from the Texas facilities is simply not relevant to this motion. Moreover, 200 may not be that many, relatively speaking.

Cenikor operated eight separate residential facilities in Amarillo, Austin, Baton Rouge, Corpus Christi, Houston, Fort Worth, Tyler, and Waco. In Baton Rouge alone, there were approximately 150 individuals in residence at any given time.[20] Multiply that figure by eight, and stretch it out over a three-year period, and simple math will suggest that 200 opt-ins is only a small fraction of the total potential number of claimants at issue in these related actions. (Cenikor knows the actual number but has not provided it to the plaintiffs or to the Court). Thus, the "213" figure listed in Defendant's brief is less impressive than it seems at first blush.

---

[19]  Cenikor bandies about the number "213" but admits that this is not accurate as some of the plaintiffs (who are not legally sophisticated) joined more than one action.
[20]  *See* Complaint, Dkt. #1, ¶ 21.

At a more basic level, it is fundamentally unjust to argue that certain former Cenikor residents should be denied an opportunity to seek their fair compensation simply because they did not happen to read the media reports about these lawsuits. True, the media coverage of Cenikor's numerous shocking labor abuses has allowed some individuals to learn about these lawsuits and opt in prior to certification. But a party's right to join a collective action should not hinge on whether he or she happens to come upon a particular article on the Internet.

Cenikor's opposition also ignores the closure of the Baton Rouge residential facility several months ago. As a result, all former residents of the Baton Rouge Cenikor facility are losing their legal rights day after day. Thus, with respect to the *Aleem* claimants specifically, the case for equitable tolling is particularly strong.

### D. The Cases Cited By Cenikor Are Not Analogous.

Cenikor then cites several cases for the general proposition that courts in the Fifth Circuit "regularly deny motions for equitable tolling when the only justification provided is the delay in deciding a motion for conditional certification." To be sure, motions for equitable tolling are often denied. But as the cases cited in Plaintiffs' brief make clear, they are often granted as well. The deciding factor is the *length* of the delay. Motions cannot be ruled on immediately; it takes time to analyze a record, hear argument, and draft an opinion. Plaintiffs agree that, in the run of the mill case with a normal litigation delay, equitable tolling is generally not granted in the Fifth Circuit. But that is not the case here, and the cases cited by Cenikor all involve delays of less than one year in ruling on a motion for conditional certification.

For example, Cenikor cites *Espinosa v. Stevens Tanker Div., LLC*,[21] a Western District of Texas case denying tolling. A review of the PACER docket in *Espinosa* reveals that the motion for conditional certification was filed on April 29, 2016, and a ruling was issued on August 5, 2016. A roughly three-month delay is normal and expected and would not be an extraordinary circumstance justifying equitable tolling. But this case presents a *seventeen*-month delay, which is a very different matter. Similarly, in *English v. Texas Farm Bureau*,[22] the motion to certify was filed in August 2018 and was ruled upon in March 2019. This is approximately a seven-month delay and, as the Court noted, a seven-month delay was "quicker than the cases Plaintiffs cite to support their request for equitable tolling."[23] In *Gomez v. Mi Cocina, Ltd.*,[24] the plaintiffs filed a motion for certification on September 11, 2014, and an amended motion on December 12, 2014. The ruling issued on March 4, 2015. Thus, depending on how you count, this was either a six-month or a three-month delay. Given the plaintiffs' refiling of an amended motion, this is hardly an unusual amount of time. In *Garcia v. Peterson*,[25] the motion was filed on October 31, 2017, and ruled upon on July 25, 2018, just less than a nine-month delay. Finally, in *Straka v. Methodist Dallas Med. Ctr.*,[26] plaintiffs filed a motion to certify on April 27, 2017, and a ruling issued on April 3, 2018. While the delay in *Straka* was longer than the ones cited above, it is still significantly shorter than the seventeen-month delay at issue here.

---

[21] *Espinosa v. Stevens Tanker Div., LLC*, 2016 U.S. Dist. LEXIS 103127 (W.D. Tex. Aug. 5, 2016).
[22] *English v. Texas Farm Bureau Bus.*, 2019 U.S. Dist. LEXIS 178078 (W.D. Tex. Oct. 15, 2019).
[23] *Id.* at *11.
[24] *Gomez v. Mi Cocina, Ltd.*, no. 3:14-cv-2934-L (N.D. Tex. Aug. 22, 2016).
[25] *Garcia v. Peterson*, No. H-17-1601 (S.D. Tex. Nov. 14, 2018). Defendant cites this case as "*Garcia v. Vasilia*," but the Defendant's full name was "Vasilia Peterson."
[26] *Straka v. Methodist Dall. Med. Ctr.*, 2018 U.S. Dist. LEXIS 56215 (N.D. Tex. Apr. 3, 2018).

Tellingly, Cenikor has not cited a single case where a delay of more than one year in ruling on a motion for conditional certification was held insufficient to justify equitable tolling. This Court unquestionably has discretion, without drawing a bright line, to determine whether certain circumstances qualify as "extraordinary" delays for the purposes of equitable tolling. Plaintiffs respectfully submit that this case qualifies under any reasonable definition.

### E. Cenikor's Attempt to Blame *Aleem* For the Delay is Absurd

Finally, Cenikor seeks to blame the *Aleem* plaintiffs for the delay, an argument which barely merits refutation. A cursory view of the record reflects that the *Aleem* plaintiffs have made every effort to push this case forward, and Cenikor has sought to delay. It is certainly Cenikor's right to do so, provided their actions remain within the Federal Rules, and they have done so ably. Incredibly, Cenikor attempts to conjure Aleem's refusal to agree to a stay of the motion for certification as somehow delaying that ruling. But refusing to agree to a stay is the opposite of delay – it evidences the *Aleem* plaintiffs' desire to move the case forward.

Finally, Cenikor states that "Aleem has still not provided any guidance to the Court as to how he proposes to have Cenikor provide the names and other identifying information of potential opt-in plaintiffs to Aleem's counsel."[27] This is simply false, as Aleem does in fact make suggestions regarding the notice process at pages nine and ten of the reply brief regarding the underlying Motion for Conditional Certification.[28] To date, Cenikor has not responded to those suggestions despite having had over nine months to do so; nor have they taken the opportunity to confer with plaintiffs' counsel

---

[27] Dkt. #80 at p. 15.
[28] Dkt. #59 at pp. 9-10.

regarding the proposed process, as the reply brief expressly invited them to do. In reality, Cenikor is not interested in solving this problem, as keeping this issue unresolved serves Cenikor's purposes in this litigation. Again, this is within Cenikor's rights as a litigant, but Cenikor should not be heard to argue that the resulting delay is somehow the fault of plaintiffs or their counsel.

## CONCLUSION

Wherefore, for the above-stated reasons, the motion for equitable tolling should be granted, and any future opt-ins in the *Aleem* matter should be treated as if they had joined the action on June 14, 2019, for purposes of calculating the statute of limitations.

Dated: Oct. 7, 2020

Respectfully Submitted,

**THE CHOPIN LAW FIRM LLC**

_/s/ Adam Sanderson_
**JUSTIN M. CHOPIN (Tex. Bar No. 24090829)**
**ADAM P. SANDERSON (La. Bar No. 31312)**
650 Poydras St., Suite 1550
New Orleans, La. 70130
Telephone:   Justin Direct: 504-229-6681
             Adam Direct: 504-517-1675
Facsimile:   504-324-0640
Email:       Justin@ChopinLawFirm.com
             Adam@ChopinLawFirm.com

– And –

Charles J. Stiegler (Pro hac vice)
STIEGLER LAW FIRM LLC
318 Harrison Ave., #104
New Orleans, LA 70124
(504) 267 0777 (telephone)
(504) 513 3084 (fax)
charles@stieglerlawfirm.com

*Attorneys for Aleem Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I certify that Oct. 7, 2020, a true and correct copy of the above and foregoing Reply Memorandum In Support of Motion for Equitable Tolling was filed electronically with the Clerk of the Court using the CM/ECF system.

                                            */s/ Adam Sanderson*

4811-4081-7870, v. 1