United States District Court
Southern District of Texas
**ENTERED**
August 12, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **TIMOTHY KLICK**, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-1583 (lead case) |
| **CENIKOR FOUNDATION**, | § § § | |
| Defendant. | § | |

### ORDER GRANTING PLAINTIFF ALEEM'S MOTION TO AMEND

Pending before this Court is member Plaintiff Aleem's Motion for Leave to File an Amended Complaint. (Doc. 115.) After considering the applicable law, and upon written and oral argument of the parties, the Court finds that the motion should be **GRANTED** for the following reasons.

**I.     BACKGROUND**

Plaintiffs in the *Aleem* matter—one of the member cases in this consolidated litigation—have filed a motion for leave to file an amended complaint. The proposed amendment adds, for the most part, not new facts, but a new legal claim under the Louisiana Unfair Trade Practices Act ("LUTPA"). That Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. § 51:1405. As alleged in ¶ 55 of the proposed amended complaint, the LUTPA claim is only brought by those "Plaintiffs and members of the collective who resided at Cenikor within the one year prior to the filing of the Complaint in this action." This is the first amendment that the *Aleem* Plaintiffs seek, although the original complaint was filed over two years ago—in May 2019.

1

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2), if a party seeks to amend a complaint more than 21 days after the complaint is filed or more than 21 days after a responsive pleading is filed, the party may do so "only with the opposing party's written consent or the court's leave."[1] There is a "bias" in favor of leave to amend, which should be granted "freely" absent a "substantial reason" to deny. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Five factors guide the analysis: whether there is "(1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Id.*

### B. Discussion

Cenikor opposes the amendment primarily on the grounds that it is futile. "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marrucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Cenikor argues that the new LUTPA claim is futile for three reasons: (1) it is barred by the statute of limitations, (2) it cannot be brought on a class-wide basis, and (3) Plaintiffs do not have standing to raise it. The Court addresses each argument in turn.

#### 1. Statute of limitations

LUTPA contains a one-year statute of limitations. At least some of the Plaintiffs here performed work for Cenikor more than one year before the complaint was filed, on May 1, 2019. For example, Plaintiff Aleem alleges that he worked for Cenikor from October 2016 to December

---

[1] Cenikor is opposed, and therefore the amendment is allowed only if the Court grants leave.

2017. Any LUTPA claim for such individuals are barred by the statute of limitations. However, the amended complaint (¶ 55) specifically alleges that only those members who opt-in to this lawsuit and who worked at Cenikor within the one year prior to the filing of the complaint are bringing the LUTPA claim, and therefore the statute of limitations bar does not apply to the claim as currently pled.[2] Thus, the requested amendment does not run afoul of the statute of limitations and is not futile on that basis.

### 2. Bar on representative litigation

LUTPA expressly provides that a claim brought under its terms may be brought "individually but not in a representative capacity." La. Stat. Ann. § 51:1409(A). State courts in Louisiana have interpreted this language as enacting a "clear ban against class actions by private persons" under LUTPA. *Indest-Guidry, Ltd. V. Key Office Equip., Inc.*, 997 So. 2d 796, 810 (La. App. 3 Cir. 2008) (quoting *State ex rel. Guste v. Gen. Motors Corp.*, 370 So. 2d 477, 483 (La. 1978) (Dennis, J., concurring)). Cenikor argues that this statutory language also operates a ban on bringing a LUTPA claim in a FLSA collective action. Plaintiffs respond by arguing that FLSA collective actions are distinct from class actions, because the former require individuals to affirmatively opt-in to litigation and are therefore not "representative" actions.

There is no controlling Fifth Circuit authority addressing this question. At least one district court in Louisiana has agreed with Cenikor, holding that LUTPA's prohibition against representative actions would apply to a FLSA collective action as well. *See Biggio v. H20 Hair,*

---

[2] At the June 21 hearing on this matter, counsel for Cenikor argued that the LUTPA claim does not relate back to the original complaint because, as a fraud claim, it is different in kind from the FLSA claims that comprise the essence of this litigation. But because the complaint does not plead any substantially new facts in support of the LUTPA claim, the Court disagrees that such a claim would have taken Cenikor by surprise, and the claim therefore relates back.

*Inc.*, No. 15-cv-6034, 2016 WL 3080484, at *2 (E.D. La. June 1, 2016) ("While collective actions differ from class actions, the fact that individuals must opt-in to the litigation rather than opt-out does not change their status as representative actions."). In reaching this holding, the district court cited circuit courts referring to the named plaintiffs in FLSA collective actions as representatives for the other "similarly situated members" who have either opted-in or plan to opt-in to the proceedings. *See, e.g.*, *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008) (describing the issue on appeal as "whether a FLSA claim becomes moot when the purported representative of a collective action receives an offer that would satisfy his or her individual claim"); *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010) (describing "plaintiffs in FLSA representative actions"); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) ("If the claimants are similarly situated, the district court allows the representative action to proceed to trial.").

However, the Supreme Court has explained that when Congress changed FLSA actions from an opt-in framework to an opt-in framework, it changed the "representative" nature of FLSA actions into something more analogous to mass joinder, in which each member of the collective is a full party to the litigation:

> In 1938, Congress gave employees and their "representatives" the right to bring actions to recover amounts due under the FLSA. No written consent requirement of joinder was specified by the statute. In enacting the Portal–to–Portal Act of 1947, Congress made certain changes in these procedures. In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, **the representative action by plaintiffs not themselves possessing claims was abolished**, and the requirement that an employee file a written consent was added. *See* 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell). **The relevant amendment was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions.** Portal–to–Portal Act of 1947, ch. 52, §§ 5(a), 6, 7, 61 Stat. 87–88. Congress left intact the "similarly situated" language providing for collective actions, such as this one.

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (emphases added). The quoted language makes clear that in the eyes of the Supreme Court, the 1947 amendments fundamentally changed FLSA collective actions from representative actions to non-representative ones. As one district judge put it, while there is certainly a named plaintiff (or multiple) in a FLSA action, "[u]nder the opt-in procedures of [FLSA], all . . . plaintiffs have affirmatively opted in, . . . **and they are full parties for all purposes**." *Coan v. Nightingale Home Healthcare, Inc.*, No. 1:05-CV-0101-DFH-TAB, 2006 WL 1994772, at *2 (S.D. Ind. July 14, 2006) (emphasis added). Thus, while some courts may informally refer to FLSA actions using the term "representative," this Court concludes that they are not in fact the kind of formal representative actions, such as class actions, that are barred by § 51:1409(A).

### 3. Standing

The final issue is whether Plaintiffs have standing to sue under LUTPA. The statute confers a private right of action on "[a]ny person who suffers any ascertainable loss of money or movable property . . . as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." La. Stat. Ann. § 51:1409(A).

Cenikor argues that Plaintiffs do not have standing, citing Fifth Circuit authority holding that despite this broad statutory language that seems to permit "any person" who is injured under the statute to sue, "LUTPA's private right of action is limited to direct consumers or to business competitors." *Tubos Acero de Mex., S.A. v. Am. Int'l Inv. Corp., Inc.*, 292 F.3d 471, 480 (5th Cir. 2002) (citing *Comput. Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000)). In response, Plaintiffs point to more recent authority from the Louisiana Supreme Court which rejected this limitation on standing under LUTPA after conducting a careful statutory

5

analysis:

> Based on the language of the statute, which does not contain a clear, unequivocal and affirmative expression that the private right of action provided in LSA–R.S. 51:1409(A) extends only to business competitors and consumers, LUTPA does not exclude other persons who assert a "loss of money or . . . property . . . as a result of the use or employment by another person of an unfair or deceptive method, act, or practice." Contrary holdings are hereby repudiated, because any limitation must be contained in the language of the statute.

*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1058 (La. 2010).

Cenikor contends that the standing analysis of *Cheramie* does not constitute a holding of the Louisiana Supreme Court, because it was "merely a plurality opinion," and the LUTPA standing portion "was only joined by three out of seven justices." One of the concurring justices in *Cheramie* agreed with this view, stating that "the majority's discussion of standing . . . is dicta." *Cheramie*, 35 So.3d at 1065 (Guidry, J., concurring). Defendant therefore argues that, in the absence of binding authority from the Louisiana Supreme Court on this issue, this court is obliged to follow earlier Fifth Circuit authority which is binding.

District courts post-*Cheramie* have nevertheless factored that case into making their best "*Erie* guess" of an individual's right to sue under LUTPA. As a district judge in the Middle District of Louisiana put it:

> [T]he Court now finds that its previous dismissal based on pre-*Cheramie* Fifth Circuit precedent regarding standing ignored the "bedrock principles of *Erie v. Tompkins*, 304 U.S. 64 (1938), which require a federal court sitting in diversity to apply the law of the state as declared by its legislature or the state's highest court." [citation omitted] "Thus, for a federal court the proper inquiry is not whether *Cheramie* is controlling authority in light of its plurality status but rather how the decision factors into the *Erie* 'guess' that this Court must make when applying state law. In the realm of *Erie*, *Cheramie* is not irrelevant even if the state's lower courts would consider it non-binding." *Id.*

*Swoboda v. Manders*, No. 14-19-EWD, 2016 WL 1611477, at *5 (M.D. La. Apr. 21, 2016). Even if the Court accepts Cenikor's position that *Cheramie* is non-binding, "Louisiana appellate courts

analysis:

> Based on the language of the statute, which does not contain a clear, unequivocal and affirmative expression that the private right of action provided in LSA–R.S. 51:1409(A) extends only to business competitors and consumers, LUTPA does not exclude other persons who assert a "loss of money or . . . property . . . as a result of the use or employment by another person of an unfair or deceptive method, act, or practice." Contrary holdings are hereby repudiated, because any limitation must be contained in the language of the statute.

*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1058 (La. 2010).

Cenikor contends that the standing analysis of *Cheramie* does not constitute a holding of the Louisiana Supreme Court, because it was "merely a plurality opinion," and the LUTPA standing portion "was only joined by three out of seven justices." One of the concurring justices in *Cheramie* agreed with this view, stating that "the majority's discussion of standing . . . is dicta." *Cheramie*, 35 So.3d at 1065 (Guidry, J., concurring). Defendant therefore argues that, in the absence of binding authority from the Louisiana Supreme Court on this issue, this court is obliged to follow earlier Fifth Circuit authority which is binding.

District courts post-*Cheramie* have nevertheless factored that case into making their best "*Erie* guess" of an individual's right to sue under LUTPA. As a district judge in the Middle District of Louisiana put it:

> [T]he Court now finds that its previous dismissal based on pre-*Cheramie* Fifth Circuit precedent regarding standing ignored the "bedrock principles of *Erie v. Tompkins*, 304 U.S. 64 (1938), which require a federal court sitting in diversity to apply the law of the state as declared by its legislature or the state's highest court." [citation omitted] "Thus, for a federal court the proper inquiry is not whether *Cheramie* is controlling authority in light of its plurality status but rather how the decision factors into the *Erie* 'guess' that this Court must make when applying state law. In the realm of *Erie*, *Cheramie* is not irrelevant even if the state's lower courts would consider it non-binding." *Id.*

*Swoboda v. Manders*, No. 14-19-EWD, 2016 WL 1611477, at *5 (M.D. La. Apr. 21, 2016). Even if the Court accepts Cenikor's position that *Cheramie* is non-binding, "Louisiana appellate courts

as well as the vast majority of federal district courts have followed [*Cheramie*'s] plurality opinion and found that private parties have a right of action under the LUTPA." *Id.* (collecting cases). Therefore, *Cheramie* clearly effected a change in LUTPA law, and is "instructive" to the issue of standing, as this Court makes its "*Erie* guess." *Id.*

Based on *Cheramie*, and the fact that other lower state courts and other federal district courts have largely chosen to follow it, the Court concludes that LUTPA confers standing, as the statute clearly states, on "any person" who has suffered injury—not only consumers and business competitors. Thus, Plaintiffs have standing to bring their LUTPA claim.

For these reasons, the amendment is not futile for any of the reasons Cenikor raises.

\*     \*     \*

Turning to the other four factors governing a request to amend under Rule 15(a)(2)—undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, and undue prejudice to the opposing party—the Court finds that none are present to such an extent as to overcome the "bias in favor of granting leave to amend." *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). Any undue delay is forgiven, at least in part, by the convoluted procedural history of this case, involving originally six (now five) member cases, multiple transfers among district courts, intervening changes in FLSA caselaw, and extended motion practice on issues of equitable estoppel, subject-matter jurisdiction, certification, and discovery. The record further does not support a finding of bad faith on the part of Plaintiffs, nor a repeated failure to cure deficiencies by previous amendments, given that this is Aleem's first request to amend. Lastly, the Court cannot find substantial prejudice to Cenikor, as the amendment does not substantially change the operative factual allegations.

For these, Plaintiffs' Motion for Leave to Amend (Doc. 115) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on August 12, 2021.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE